Filed 9/9/14  P. v. Burnett CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JAMES ALFRED BURNETT, JR.,<br><br>　　　Defendant and Appellant. | B245856<br><br>(Los Angeles County<br>Super. Ct. No. TA117250) |

APPEAL from a judgment of the Superior Court of Los Angeles County. John T. Doyle, Judge.  Affirmed and remanded.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted appellant James Alfred Burnett, Jr., of one count of felony false imprisonment. (Pen. Code, § 236).[1] The jury was hung on two other counts of criminal threats and attempted murder, which were later dismissed by the prosecutor. Appellant admitted that he had two prior "strike" convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served three prior prison terms (§ 667.5, subd. (b)). Appellant was sentenced to 25 years to life in state prison.

Appellant contends (1) the evidence was insufficient to support a felony false imprisonment conviction, (2) he should have been advised of the opportunity to withdraw his admission to a prior felony conviction following the trial court's deviation from its indicated sentence, and (3) the trial court abused its discretion by failing to strike his prior felony convictions. We disagree. But we remand the matter for clarification of sentencing and resentencing, if appropriate.

## FACTS

### Prosecution Case

At 2:00 p.m. on March 17, 2011, Candy Sumlin (Sumlin) was walking up the stairs to the train platform at the Avalon Green Line Station. When she reached the platform, appellant grabbed her in a tight bear hug. Appellant mumbled twice, "I'm going to kill you," and "I'm taking you with me." Sumlin struggled and screamed for help. She could not break free.

Sumlin felt her feet leave the ground and appellant dragged her towards the train tracks. She could hear a train coming and thought she was going to die. She continued to scream for help and some men came to her rescue. They knocked appellant down and he took Sumlin with her as he fell. She managed to break free with the help of the other men. A video of the incident was captured by security tapes and played for the jury.

Sumlin ran down the stairs and called her mother, who told her to take a train to the next station where she would pick her up. Sumlin did so, but she was still scared and continued to cry even when she reached her mother's house. At the house, Sumlin saw a

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

video of the incident on the nightly television news and called the police to identify herself. Los Angeles Sheriff's deputies came to the house to interview her. Detective Kyle Ynclan interviewed Sumlin the next day and she identified appellant as her attacker from a photographic lineup. Sumlin testified that appellant never asked her for help and never said that he thought someone was about to attack or kill him.

In the video shown to the jury, appellant was seen sitting next to a man wearing red sweatpants. Appellant was later seen talking to a man just prior to grabbing Sumlin. The man took off his jacket, revealing a red shirt, and then took off the shirt. Appellant had a faded Crips gang tattoo on his arm. Detective Ynclan testified that the Denver Lane Bloods and PJ's gangs wore red and were rivals of the Crips.

On the afternoon of the incident, Los Angeles County Sheriff's Deputy Robert De La Garza received a call of a fight disturbance and reported to the Wilmington train station, which is the next station after the Avalon station. When he arrived, he found appellant and another man in the custody of a station security assistant. Appellant had cuts and bruises and looked disheveled, as if he had been in a fight. Deputy De La Garza and his partner took appellant to a hospital for medical treatment before booking him. Appellant did not appear to Deputy De La Garza to be under the influence of any narcotics.

**Defense Case**

### Appellant's Testimony

Appellant did not sleep the night before the incident. On the morning of the incident, he bought four rocks of crack cocaine. He was a long-time user of cocaine. Appellant took the Green Line train to visit a friend who lived near the Avalon station. They bought some beer and smoked three of the four rocks. The beer and the cocaine "leveled" each other out, but appellant was still feeling high when he got back to the Avalon station around 11:30 a.m.

Appellant smoked more crack on the platform and then just stood there for a long time, trying to calm down from his high. Around 1:35 p.m., appellant noticed some men staring at him. One man was making hand gestures down the stairs to someone else, and

3

appellant felt "leery." A train arrived on the platform, but appellant did not get on because he "just didn't." Appellant was high and got "spooked" when a woman walked past him, so he followed her around the platform for a time feeling "paranoid." When appellant saw the men wearing red clothing, he thought they were gang members of the PJ's and the Denver Lanes. He thought that a man sitting next to him was reading his Crips tattoo and texting someone about it. Appellant told another man to look down at all the "dudes" downstairs because they were looking at appellant. He asked the man to call the police, but the man said he did not have a phone. Another man was holding paperwork and appellant thought it was a picture of him.

When Sumlin appeared on the platform, appellant rushed over and told her that people were trying to kill him. He did not tell her that he was going to kill her or that he was taking her anywhere. The men who had been watching him then rushed at him. Appellant was afraid they were going to push him onto the tracks in front of an oncoming train, and he thought that they would not push him over if he held on to Sumlin. Appellant was using Sumlin as a shield. Appellant did not intend to kill or kidnap Sumlin and had the opportunity to throw her onto the tracks, if that had been his intent.

Appellant was knocked down and someone hit him on the head with a gun. Appellant got on the next train to the Wilmington station. He went downstairs to report the incident, and found a security assistant. Appellant told him that he had been hit on the head with a gun (his head was bleeding). Another man who had witnessed the incident came up next to appellant, and they all walked to meet Deputy De La Garza. Appellant still thought that he had been under attack that day.

Appellant admitted that he was convicted of rape in 1987. He had no intention to rape Sumlin. He did not think Sumlin was associated with the gang members and wished her no harm.

### Dr. Plotkin's Testimony

Psychiatrist Gordon Plotkin testified as an expert witness on the evaluation of people under the influence of narcotics. Dr. Plotkin had met with appellant and reviewed his medical records, which indicated long-term crack cocaine use and past incidents of

4

paranoia. Dr. Plotkin watched the video and heard appellant's testimony in court. Dr. Plotkin opined that appellant's behavior was consistent with someone under the influence of crack cocaine. Crack cocaine can cause paranoia, delusions and hallucinations, especially when combined with a lack of sleep. Although crack cocaine often makes a person restless, Dr. Plotkin saw no evidence in the video that appellant was restless. Dr. Plotkin had no reason to believe that appellant was feigning the symptoms of paranoia.

**Detective Ynclan's Testimony**

Detective Ynclan interviewed appellant the day after the incident. Appellant stated that he thought the men wearing red were gang members and that they were going to throw him onto the train tracks. He grabbed Sumlin for help. Appellant did not mention that he had smoked crack cocaine on the platform or at all the day of the incident, or that he had consumed beer. He also never mentioned that anybody said, "Get him," on the platform.

## DISCUSSION

## I. Substantial Evidence Supports a Conviction of Felony False Imprisonment

Appellant contends the evidence was insufficient to support a felony false imprisonment conviction and therefore we should reduce the conviction to a misdemeanor. We find the evidence sufficient to support a felony conviction.

### A. *Standard of Review and Applicable Law*

A defendant raising a claim that the evidence was insufficient to support his conviction bears a "massive burden" because this court's "role on appeal is a limited one." (*People v. Akins* (1997) 56 Cal.App.4th 331, 336.) We review the entire record in the light most favorable to the judgment to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.) We presume in support of the judgment the existence of every fact that a trier of fact could reasonably deduce from the evidence. (*Ibid*.) This standard applies whether direct or circumstantial evidence is involved. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.) Reversal is not warranted unless it appears "'that upon no hypothesis whatever is there sufficient

substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) False imprisonment becomes a felony when "effected by violence, menace, fraud, or deceit." (§ 237, subd. (a).) """Violence' . . . means "'the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint."'" [Citations.] 'Menace' is defined ""as a threat of harm express or implied by word or act.""'" (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.)

Although force is an element of both felony and misdemeanor false imprisonment, felony false imprisonment requires force that is greater than reasonably necessary to effect the restraint. (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462.) "When a rational fact finder could conclude that a defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is menace sufficient to make false imprisonment a felony. An express threat or use of a deadly weapon is not necessary." (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491; *People v. Islas* (2012) 210 Cal.App.4th 116, 124–126.)

### B. Analysis

The evidence is sufficient to support the conviction of felony false imprisonment. When appellant grabbed Sumlin in a tight bear hug and restrained her movement against her will, he performed the basic act necessary for false imprisonment. But appellant also engaged in violence when he lifted Sumlin off of her feet and dragged her toward the train tracks, because the use of such physical force was "over and above" the amount of force reasonably necessary to restrain her. Additionally, appellant engaged in menace because he explicitly threatened to kill Sumlin and told her that he was going to be taking her with him. While Sumlin testified that appellant was mumbling when he spoke to her, she repeatedly testified that she clearly understood his threats.

Appellant argues that the jury's failure to convict him of either criminal threats or attempted murder indicates that the jurors were unconvinced of the threats and, therefore, such evidence was not substantial enough to support a finding of felony false

6

imprisonment. However, the law is clear that courts are unable to infer anything regarding a jury's intent from determinations, or lack thereof, on other verdicts. (See *People v. Celis* (2006) 141 Cal.App.4th 466, 470, fn. 2 ["Jury determinations are not always consistent but it is clear that one determination cannot be used to impeach another"].) In the instant case, the jury did not acquit appellant of the other two charges; it was simply unable to reach unanimous verdicts.

In any event, we are satisfied that substantial evidence supports the conviction of felony false imprisonment.

## II. No Right to Withdrawal of Admission

Appellant contends the trial court prejudicially erred by failing to advise him of the opportunity to withdraw his admission to a prior felony conviction of rape when the court later decided not to impose its previously indicated sentence. We disagree.

### A. Relevant Background

During the jury trial, appellant admitted that he had been convicted of rape in 1987. After the jury found him guilty of false imprisonment, he waived his right to a jury trial on the priors allegations. He then admitted one prior strike conviction for robbery and three prior prison terms, but not the alleged prior strike convictions for rape and kidnapping. Appellant argued that both his rape and kidnapping convictions had been reversed, while the prosecutor indicated she had evidence that only the kidnapping conviction had been reversed. The court set the matter for trial on June 29, 2012. On that date, appellant substituted in a new defense counsel, and the matter was continued several times.

When the parties met again on November 16, 2012, the trial court stated its opinion that regardless of the rape conviction, it felt that Proposition 36, the Three Strikes amendment, inured to appellant's benefit because his false imprisonment conviction was not a serious or violent felony. The prosecutor argued that because rape is one of the prior crimes that still subjects a defendant to the full extent of the Three Strikes law, appellant's false imprisonment conviction could be punished as a third strike with a 25-

years-to-life sentence. The court disagreed with the prosecutor, and indicated that it would double appellant's sentence instead of sentencing him to 25 years to life.

After a discussion off the record, the prosecutor took appellant's admission to the prior rape conviction. The trial court then sentenced appellant to six years (double the upper term of three years) for the felony false imprisonment, plus three years for the prior terms, for a total of nine years in state prison.

On December 13, 2012, the trial court held a hearing on whether this sentence was authorized. After argument, the court determined that it had misinterpreted the law and that its sentence was illegal and void under the Three Strikes law. The court resentenced appellant to 25 years to life in state prison.

### B. Applicable Law

An indicated sentence is when a defendant admits all charges and the trial court informs the defendant "what sentence [it] will impose if a given set of facts is confirmed." (*People v. Clancey* (2013) 56 Cal.4th 562, 570.) Thus, if the factual predicate underlying the indicated sentence is disproved, the court may withdraw the indicated sentence. (*Id*. at p. 576.) Additionally, a trial court retains broad discretion to modify an indicated sentence even if the factual predicate is not disproved. (*Id*. at pp. 576–577.) For example, the court may depart from an indicated sentence based on new information or based on a reexamination of the relevant circumstances. (*Id*. at p. 576.) "The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate." (*Ibid*.)

Thus, after expressing an indicated sentence, the trial court retains its full discretion at the sentencing hearing to select a fair and just punishment. (*People v. Clancey, supra,* 56 Cal.4th. 562.) "[A]n indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing. Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on

the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence." (*Id*. at p. 576.)

### C. Analysis

The parties dispute whether appellant admitted the prior rape conviction as a result of an indicated sentence. But even assuming that appellant did so, his contention that he was not advised of the opportunity to withdraw his admission in the event the trial court later departed from its indicated sentence has no merit.

There is no current authority that gives the defendant an unqualified right to withdraw his plea or admission if the court deviates from a lawful indicated sentence; nor is there any current authority requiring a trial court to advise the defendant that he will be permitted to withdraw his plea or admission entered after a lawful indicated sentence.

Appellant's reliance on three cases to support his position is misplaced. In *People v. Superior Court* (*Felmann*) (1976) 59 Cal.App.3d 270, the matter was remanded because it was unclear whether a negotiated plea bargain was made with the prosecutor under section 1192.5, which allows a defendant to withdraw a plea if the court withdraws its approval of the plea. (*Id*. at p. 273.) The *Felmann* court explained that an indicated sentence may result in a conditional plea if the indicated sentence is promised rather than merely expressed. (*Id*. at pp. 273, 276–277.) If the prosecutor agrees to the conditional plea it is lawful; if not, it amounts to improper judicial plea bargaining. (*Id*. at pp. 276–278.) In *People v. Labora* (2010) 190 Cal.App.4th 907, 910, the judgment was reversed because the reviewing court determined that improper judicial plea bargaining had occurred and therefore the trial court was directed to give the defendant the opportunity to withdraw his guilty plea; an indicated sentence was not at issue. Finally, In *People v. Delgado* (1993) 16 Cal.App.4th 551, 555, the reviewing court noted that no promise was ever made by the court, and that the court had gone above and beyond its duties by giving the defendant an opportunity to withdraw.

### III. No Abuse of Discretion In Denying Motion to Strike Prior Felony Convictions

Appellant contends the trial court abused its discretion by denying his motion to strike his prior felony convictions. We disagree.

## A. Applicable Law

Section 1385, subdivision (a) provides that a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."  This includes the power to strike allegations or vacate findings relevant to sentencing, such as the allegation or finding that a defendant has prior felony convictions for purposes of the Three Strikes law.  (*People v. Williams* (1998) 17 Cal.4th 148, 151–152 (*Williams*), citing *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).)

A court's discretion to strike prior felony convictions "in furtherance of justice" is "limited."  (*Romero, supra*, 13 Cal.4th at p. 530.)  Central to the concept of "'in furtherance of justice'" is the balancing of both the defendant's constitutional rights and society's legitimate interest in keeping a career criminal incarcerated.  (*Williams, supra*, 17 Cal.4th at p. 161.)  "'"'"At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." [Citations.]' [Citations.]"'"'  (*Romero, supra*, 13 Cal.4th at pp. 530–531.)  In considering these interests, "no weight whatsoever may be given to factors extrinsic to the scheme," such as court congestion or the trial court's antipathy towards the effect of the Three Strikes law.  (*Williams, supra*, at p. 161.)  "[I]n the same balance, preponderant weight must be accorded to factors intrinsic to the scheme."  (*Ibid.*)  These include the nature of the present offense, the nature of the defendant's prior offenses, and other attributes individual to the defendant, such as his or her background, character, and prospects.  The trial court must decide whether the defendant is "deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Ibid.*)

## B. Analysis

Appellant argues that the trial court focused exclusively on his criminal record without making an individualized consideration of the relevant and mitigating factors.  For example, appellant points to his testimony that he had smoked crack cocaine before grabbing Sumlin and was under the paranoid delusion that he was about to be attacked by

gang members when he used her as a shield. While it is true that the trial court recited appellant's lengthy criminal record (beginning at age 12), the record clearly shows that the court was well aware of appellant's testimony. The court stated: "I heard the defendant testify too. I heard Candy Sumlin testify. And quite candidly speaking . . . , the fact that he said that 'I was a prior gang member and/or I thought gang members were about to attack me because I was under the influence at the time and I used some strange woman as a shield' does not fall upon receptive ears to this court." The court noted that appellant could have killed not only Sumlin, but the people who came to her aid, and himself as well. "He's a danger to himself as much as anybody else."

Appellant also notes that his prior strike convictions for robbery and rape arose out of a single incident in 1987 and that his current conviction for false imprisonment is not a serious or violent felony under the law. But the record shows that the trial court considered his past rape conviction and its similarity to the current offense. The court stated: "[I]n his prior case [appellant] took a woman, snatched her off the street, and forcibly raped her. In this case, he snatches a woman on a platform, struggles with her, moves her towards the platform. Citizens come to help arrest [*sic*] the victim from him, and he testifies that he's trying to use the victim as a shield because he thought gang members were after him. [¶] None of the facts in his background help [appellant], not even the passage of time because . . . it can be said that no solace comes to the community by the passage of time of some twenty years of his prior act to this act because it can be said that he could in fact engage in the same type of conduct because he can't say that his pattern of conduct—his aberrant period of conduct was to a limited period of his life. Some twenty years later he's engaging in the same almost activity [*sic*]." The trial court found that appellant "is neither in whole or in part outside the scheme or the spirit of the new Three Strikes law."

Because the record shows that the trial court did make an individualized consideration of the totality of the circumstances, we find no abuse of discretion in the denial of appellant's motion to strike his prior convictions.

## IV. Sentence Enhancements

The People contend the trial court gave an unauthorized sentence by not imposing certain sentence enhancements.

First, relying on section 667, subdivision (a)(1), the People argue that the trial court is required to impose a consecutive five-year sentence enhancement because appellant was convicted of a serious felony and admitted he had a prior serious felony conviction for rape.[2] Appellant counters that he never admitted a prior serious felony under section 667; rather, he admitted the robbery and rape convictions solely for purposes of the Three Strikes law. Neither argument is well taken for the simple reason that false imprisonment is not a serious felony. (§ 1192.7, subd. (c).) Indeed, the prosecutor stated as much in court ("the current offense is not . . . serious or violent"). Thus, section 667 does not apply here.

Next, the People argue that section 667.5, subdivision (b) required the trial court to impose consecutive one-year sentence enhancements for each of the three prior prison terms appellant admitted he served.[3] Appellant suggests that the People have forfeited this argument because the prosecutor's sentencing memorandum only requested a sentence of 25 years to life. Appellant also points out that after the trial court imposed the 25-years-to-life sentence, it asked the prosecutor about the "remaining outstanding counts," and the prosecutor responded, "People move to dismiss all remaining counts and

---

[2]   Section 667, subdivision (a)(1) states: "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."
Section 667, subdivision (a)(4) states: "As used in this subdivision, 'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7."

[3]   Section 667.5, subdivision (b) states in part: "[W]here the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison term therefor, the court shall impose a one-year term for each prior separate prison term . . . for any felony."

allegations" under section 1385. It may be that the trial court and prosecutor were referring only to the two counts and corresponding allegations on which the jury was hung. But the record is unclear as to whether the prosecutor was dismissing all prior prison term allegations. We therefore remand the matter to the trial court for clarification and resentencing, if appropriate.

## DISPOSITION

The matter is remanded to the trial court for clarification of sentencing under section 667.5, subdivision (b) and resentencing, if appropriate. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
    ASHMANN-GERST


We concur:


_____, P. J.
  BOREN


_____, J.*
  FERNS


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13